ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| FIRSTBANK PUERTO RICO<br><br>Parte Apelada<br><br>v.<br><br>RAÚL DÍAZ ORTIZ, ANA SOFÍA FONT DONES Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES<br><br>Parte Apelante | KLAN202400333 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2021CV02583<br><br>Sobre: Ejecución de Hipoteca por la vía ordinaria y Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

Compareció ante este Tribunal la parte apelante, Raúl Díaz Ortiz, Ana Sofía Font Dones y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante, "matrimonio Díaz Font" o "Apelantes"), mediante recurso de apelación presentado el 8 de abril de 2024. Nos solicitó la revocación de la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "TPI"), el 27 de septiembre de 2023. Dicho dictamen fue objeto de una solicitud de reconsideración que fue denegada por vía de una *Orden* dictada el 8 de marzo de 2024, notificada y archivada en autos en igual fecha.

Por los fundamentos que expondremos a continuación, se *revoca* la *Sentencia Sumaria* apelada.

**I.**

El caso de autos se originó con la presentación de una "**Demanda**" por parte de Firstbank Puerto Rico (en adelante, "Firstbank" o "Apelado") sobre cobro de dinero y ejecución de hipoteca, en contra de los Apelantes.

Número Identificador
SEN2024_____

Allí, Firstbank sostuvo que era tenedor de buena fe de cierto pagaré hipotecario suscrito el 29 de marzo de 2010 ante el Notario Jorge García Soto, por la suma de $467,900.00, más intereses al 5 3/4% anual y otros créditos accesorios, comenzando el 1 de mayo de 2010 y vencedero el 1 de abril de 2050. Asimismo, alegó que en aseguramiento del aludido pagaré hipotecario, se constituyó una primera hipoteca según consta de la Escritura Núm. 172 de 29 de marzo de 2010, otorgada ante el mismo Notario Público. Añadió que la hipoteca grava la propiedad inmueble que se describe a continuación:

> URBANA: Parcela de terreno identificada como solar número 7 de la Urbanización Terra Ciudad Jardín de Gurabo, radicada en el Barrio Hato Nuevo del municipio de Gurabo, Puerto Rico, con una cabida de 1093.5700 metros cuadrados. En lindes por el NORTE, en distancia de 6.312 metros y 5.951 metros, con la calle Sol de Amanecer (calle #1); por el SUR, en distancia de 4.924 metros, con el solar número 8 y en distancias de 26.508 metros y 7.979 metros y 3.257 metros, con la calle Sol de Lago (calle #2); por el ESTE, en distancia de 25.992 metros, con el solar 6 y en una distancia de 23.297 metros, con el solar número 2 y por el OESTE, en una distancia de 48.435 metros, con área de facilidades vecinales Ciudad Jardín Gurabo Resort and Country Club y área del Lago.

> Inscrita al folio ciento ochenta y cinco (185) del tomo cuatrocientos noventa y dos (492), finca número diecinueve mil ciento veintiséis (19126) de Gurabo, Registro de la Propiedad de Caguas, Sección II.

En ocasión de sus causas de acción, arguyó que el matrimonio Díaz Font incumplió con las cláusulas de la hipoteca antes mencionada, por haber dejado de pagar las mensualidades vencidas desde el 1 de noviembre del 2019 y el primer día de cada mes subsiguiente hasta la fecha de la presentación del pleito, sin que se efectuara el pago de las mismas a pesar de los múltiples requerimientos, avisos y las oportunidades que le fueron concedidas, por lo que Firstbank declaró la totalidad de la deuda vencida, a tenor con lo dispuesto en la escritura de hipoteca.

A la luz de lo anterior, añadió que los Apelantes les adeudaba la suma de $429,893.77 de balance principal, más los intereses al 5.75%, desde el 1 de octubre de 2019 hasta su total y completo pago, más la suma de las primas de seguro hipotecario y riesgo, recargos por demora computados al 5%, a razón de $124.67 sobre cada mensualidad de

$2,493.38 y cualesquiera otras cantidades pactadas en la escritura de primera hipoteca, desde la fecha antes mencionada y hasta la fecha del total pago de las mismas, más la suma estipulada de $46,790.00 para gastos, costas y honorarios de abogados. En vista de ello, solicitó que se ordenara al matrimonio Díaz Font el pago de las cuantías que, según su postura, estaban vencidas y eran líquidas y exigibles. En su defecto, que se le ordenara al Alguacil del TPI a vender en pública subasta el bien inmueble que aseguraba la deuda hipotecaria.

Tras varios trámites procesales, el 25 de marzo de 2022, los Apelantes presentaron "**Contestación a Demanda**". En esencia, negaron las alegaciones consignadas en la "**Demanda**" y sostuvieron afirmativamente que fueron víctimas de dolo grave por parte de Firstbank, pues presuntamente fueron incitados a adquirir el inmueble antes descrito. Arguyeron que la razón principal por la que se interesaron en adquirir la propiedad fue debido a las facilidades que iba a contener el proyecto en donde ubicaba el bien inmueble en controversia, según dispuesto en un "Contrato Uniforme de Compraventa".

En cuanto a dicha afirmación, esgrimieron que lo que les movió a comprar el inmueble fueron las promesas efectuadas personalmente a ellos por representantes de la compañía dueña del proyecto y del Sr. Esteban Díaz, quien presuntamente era funcionario autorizado del Firstbank. Entre las promesas llevadas a cabo, incluyeron lo siguiente: (1) un gimnasio bien equipado; y (2) una piscina a construirse tipo "infinity" con vista a un lago y que dicho lago estaría rodeado de caminos para que los residentes pudiesen caminar y hacer ejercicios en esa área y que dichas facilidades se terminarían en pocos meses. Expresaron que en todas las ocasiones en que dialogaron con funcionarios del desarrollador previo a la venta, funcionarios del Firstbank también estaban presentes y éstos secundaban lo expresado en relación a la construcción de las áreas comunes.

Esto era así, ya que el Apelado era la entidad financiera exclusiva del proyecto y si alguien interesaba adquirir una propiedad en el mismo

venía obligado a financiar su propiedad con Firstbank o pagar la totalidad del valor de la propiedad al momento de adquirirla. Adicionalmente, el matrimonio Díaz Font esbozó que Firstbank también fue la institución que financió la construcción del proyecto, por lo que tenía un interés particular en que se vendieran la totalidad de los inmuebles construidos para así poder recuperar su inversión. No obstante lo anterior, alegaron que a la fecha en que visitaron las facilidades del proyecto, y antes de que se otorgara la escritura de hipoteca en controversia, ya Firstbank había congelado el desembolso de fondos para la construcción de las áreas comunes y para la construcción del remanente de las residencias, según los planos del proyecto.

Manifestaron que, a pesar de tener conocimiento pleno de que las áreas comunes del proyecto no serían construidas según prometidas y promocionadas, el Sr. Esteban Díaz en todo momento les hizo creer que dichas áreas comunes de tipo "resort" serían construidas y que fue a base de dichas representaciones que decidieron adquirir una propiedad en el proyecto y declinaron hacerlo en construcciones aledañas. Sobre este respecto, plantearon que de haber sabido que las representaciones que se les hicieron con relación a su propiedad sobre las áreas recreativas eran falsas o que no se iban a cumplir, no hubiesen comprado la referida propiedad ni hubiesen firmado la escritura de hipoteca. Arguyeron que en ningún momento se les indicó sobre la posibilidad de que las áreas recreativas no fuesen construidas previo a la compra de la propiedad. Es menester destacar que, como parte de las defensas afirmativas invocadas, el matrimonio Díaz Font acumuló las defensas de fraude, dolo y dolo grave.

A base de todo lo anterior, solicitó que se declarara "No Ha Lugar" la "**Demanda**" y se determinara que Firstbank vició su consentimiento para perfeccionar el contrato de hipoteca en controversia, a través de engaños y fraude efectuados por sus representantes autorizados. Luego del caso ser referido al proceso de mediación compulsoria y de haberse determinado que la propiedad anteriormente descrita no era la residencia

principal de los Apelantes, el TPI estableció como fecha para culminar el descubrimiento de prueba el 22 de marzo de 2023.

Así el trámite, el 20 de abril de 2023, Firstbank presentó "**Moción en Solicitud de Sentencia Sumaria**". Argumentó que no existían hechos materiales en controversia que impidieran o limitaran la facultad del foro primario de dictar sentencia sumariamente sobre la causa de acción de cobro de dinero y ejecución de hipoteca. Por tanto, solicitó se condenara al matrimonio Díaz Font al pago de la deuda reclamada y, en su defecto, se ordenara la ejecución de la hipoteca, utilizando como tipo mínimo para la primera subasta la cantidad de $467,900.00.

El 9 de junio de 2023, los Apelantes presentaron "**Oposición a Solicitud de Sentencia Sumaria**", mediante la cual sostuvieron que Firstbank no puso al TPI en posición de dictar sentencia sumaria sobre las controversias trabadas sobre el incumplimiento de la obligación contraída y de la cuantía adeudada. Sostuvieron que existían hechos adicionales incontrovertidos sobre sus alegaciones relacionadas al presunto dolo en la contratación efectuado por el Apelado. Fundamentado en las imputaciones que se detallaron en su alegación responsiva sobre las actuaciones de los funcionarios de Firstbank, expresaron que se les indujo a adquirir propiedades a precios inflados justificados por la futura construcción de unas áreas recreativas que nunca se iban a hacer. Así pues, añadieron que, debido a esas maquinaciones insidiosas, nunca hubieran adquirido el inmueble en controversia. Por ello cualquier alegado incumplimiento se tornaba en irrelevante, ya que el contrato de hipoteca en su inicio adoleció de un vicio en el consentimiento que anulaba el mismo. En vista de lo anterior, peticionó que se denegara la solicitud de sentencia sumaria presentada por el Apelado, pues existían claras controversias de hechos sobre si existió o no dolo en la contratación que anulaba la hipoteca cuya ejecución se solicitó.

El 27 de septiembre de 2023, el foro primario emitió *Sentencia Sumaria* mediante la cual concluyó que el matrimonio Díaz Font no controvirtió los hechos, según expuestos en la "**Moción de Sentencia**

**Sumaria**", y ordenó a los Apelantes al pago de la suma de $429,893.77 de balance principal, más los intereses sobre dicha suma al 5.75% anual, desde el 1 de octubre de 2019 hasta su completo pago, más las primas de seguro hipotecario y riesgo, recargos por demora computados al 5%, sobre cada mensualidad de principal e interés por la suma de $2,493.38, a razón de $124.67 desde el 1 de noviembre de 2019 y cualesquiera otras cantidades pactadas en la escritura de primera hipoteca, desde la fecha antes mencionada y hasta la fecha del total pago de las mismas, más la suma estipulada para gastos, costas y honorarios de abogados. Asimismo, advirtió que si, luego de transcurridos treinta (30) días sin que se efectuara dicho pago, se comenzara el proceso de ejecución de la hipoteca que garantizaba la deuda reclamada por Firstbank.

Insatisfechos con dicha determinación, los Apelantes presentaron "**Moción Solicitando Reconsideración**" que fue denegada mediante *Orden* notificada el 8 de marzo de 2024. Aún inconforme con lo anteriormente resuelto, el matrimonio Díaz Font acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló el siguiente error:

> **Erró el Honorable Tribunal de Primera Instancia al emitir una Sentencia Sumaria y al no considerar que el First Bank, por medios de sus oficiales, incurrió en dolo al inducir a los apelantes a firmar la hipoteca y el pagaré en controversia**.

El 29 de abril de 2024, Firstbank presentó "**Alegato de la Parte Apelada**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones

ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808

(2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados,

en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre**

**elementos subjetivos, de intención, propósitos mentales o negligencia**. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**[1]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

**C.**

En el contexto del incumplimiento contractual, se entiende que existe dolo cuando se induce a una parte a otorgar un contrato mediante "maquinaciones insidiosas". Pérez Rosa v. Morales Rosado*,* 172 DPR 216, 229 (2007). Esto es, toda conducta artificiosa o ilícita, cuyo fin es engañar a uno de los involucrados, ello tras afectar la prestación voluntaria e informada de su consentimiento en la formación del contrato. Vélez Torres, *op. cit,* págs. 58-61. Así, el dolo "implica todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a reunirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él". Íd. El dolo en el consentimiento al momento de otorgar el contrato produce la

nulidad del contrato, de concurrir ciertas circunstancias. 800 Ponce de León v. AIG, 205 DPR 163, 183 (2020).

También constituye dolo "el callar sobre una circunstancia importante relacionada con el objeto del contrato". García Reyes v. Cruz Auto Corp., 173 DPR 870, 886 (2008). Es decir, que el dolo no necesariamente implica una artimaña, sino que el silencio sobre determinados hechos relevantes para viabilizar la contratación, también se cataloga como tal. Bosques v. Echevarría, 162 DPR 830, 836 (2004).

Por otra parte, el dolo no se presume, por lo que tiene que demostrarse, ya sea de forma indirecta o mediante evidencia circunstancial. Además, no todo tipo de dolo produce la nulidad de un contrato. García Reyes v. Cruz Auto Corp., supra, pág. 886. Para que se produzca la nulidad del contrato, el dolo debe ser grave y no meramente incidental. Pérez Rosa v. Morales Rosado, supra, págs. 229-230. Además, no debe haber sido empleado por ambas partes contratantes. 31 LPRA sec. 3409.

El dolo incidental es el que afecta las obligaciones accesorias del contrato, y únicamente da lugar a una indemnización en daños y perjuicios. Colón v. Promo Motors Imports, Inc., 144 DPR 659, 667 (1997). Ello responde a que no tuvo una influencia decisiva sobre la obligación, dado a que, aunque hubo engaño en el modo en que el contrato fue celebrado, el perjudicado sí tenía la voluntad de contratar. Pérez Rosa v. Morales Rosado, supra, pág. 230; García Reyes v. Cruz Auto Corp., supra, pág. 887. En otras palabras, que el contrato se hubiera celebrado de todas formas, pero bajo condiciones diferentes. Colón v. Promo Motors Imports, Inc., supra, pág. 667.

De otro lado, el dolo es grave o causante cuando el acreedor no hubiese celebrado el contrato de conocer de su existencia. S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 64 (2011). Es decir, cuando el engaño recae en los elementos esenciales del contrato; es decir, que tiene un efecto en las motivaciones principales que llevaron a la parte afectada a vincularse. Colón v. Promo Motors, Inc., supra, pág. 669. Cabe destacar

que la determinación de si el dolo es grave o incidental es una cuestión de hecho. Por lo tanto, está sujeta a la apreciación de las circunstancias concurrentes en cada caso. Acosta & Rodas, Inc., v. PRAICO, 112 DPR 583, 616 (1982). No obstante, la causa de acción en la contratación por dolo, tanto en su modalidad causante como en la incidental, requieren que el reclamante presente la prueba de la conducta dolosa. Colón v. Promo Motors Imports, Inc., *supra*, pág. 668.

Ahora bien, el Tribunal Supremo ha establecido que las circunstancias de cada caso son determinantes en la adjudicación de la existencia de dolo que anula el consentimiento. Entre otros aspectos, se deben considerar los siguientes: (1) la preparación académica del perjudicado; (2) su condición social y económica; (3) y las relaciones y tipo de negocios en que se ocupa. Citibank v. Dependable Ins. Co., Inc., 121 DPR 503, 519 (1988); Miranda Soto v. Mena Eró, 109 DPR 473, 478 (1980). Así pues, el dolo puede surgir de un simple hecho o del conjunto de éstos y la evolución de las circunstancias y manejos engañosos. Acosta & Rodas, Inc. v. PRAICO, *supra*, pág. 616.

> De la misma manera, puede ser que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión, sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación, puede dar lugar a la variante del dolo causante. Colón v. Promo Motors, Inc., *supra*, pág. 669.

### III.

En esencia, el matrimonio Díaz Font sostiene que el TPI erró al dictar sentencia sumariamente cuando existe una controversia material en cuanto a la existencia de dolo en la contratación por parte de oficiales de Firstbank. Por su parte, el Apelado sostiene que el foro primario no erró al disponer del caso sumariamente, pues el caso de autos es uno de cobro de dinero y ejecución de hipoteca y los hechos esenciales están realmente incontrovertidos. De otra parte, Firstbank sostiene que el matrimonio Díaz Font no acumuló una causa de acción de dolo en la contratación mediante la presentación de una reconvención, por lo que se debe entender como renunciada. Asimismo, sostuvo que la defensa de dolo invocada por los

Apelantes fue una general, sin fundamentos y sin especificidad, por lo cual debía entenderse por renunciada. Veamos.

Conforme hemos adelantado en los acápites anteriores, desde su primera comparecencia, los Apelantes alegaron afirmativamente la existencia de dolo en el consentimiento que otorgaron a la hora de suscribir el contrato de préstamo con Firstbank. Igualmente, el matrimonio Díaz Font invocó la defensa de dolo en su "**Contestación a Demanda**". Al examinar la misma, entendemos que no debe existir duda alguna sobre el hecho de que desde inicios del pleito el foro apelado tenía ante sí una controversia dirigida a atacar la validez del contrato cuyo cumplimiento el Apelado solicitó se ordenara, so pena de ejecutar el gravamen hipotecario que garantizaba la obligación principal. En otras palabras, un análisis detenido y sosegado de las alegaciones acumuladas por el matrimonio Díaz Font en su alegación responsiva revela que, contrario a la postura de Firstbank, la defensas de dolo y fraude fueron específicas, con referencia a hechos particulares y con una clara exposición de su postura. Por tanto, no podemos acoger la teoría de que las mismas deben darse por renunciadas, pues cumplen con las disposiciones de las Reglas 6.2 y 6.3 de Procedimiento Civil, 32 LPRA Ap. V, RR. 6.2 y 6.3.

Establecido lo anterior, y a la luz del estado de derecho reseñado, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro de instancia. Del análisis *de novo* de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1.      La parte demandada-apelante son los titulares registrales del inmueble objeto de ejecución.

2.      La parte demandante-apelada es dueña y actual tenedora de un pagaré suscrito por la parte demandada-apelante, a favor de FirstBank Puerto Rico, o a su orden, con fecha 29 de marzo de 2010, ante el Notario

Jorge García Soto, por la suma de $467,900.00, más intereses al 5 3/4% anual y otros créditos accesorios, comenzando el primero de mayo de 2010 y vencedero el día primero de abril de 2050.

3. Para garantizar el pago de dicho pagaré se constituyó una primera hipoteca según la Escritura Núm. 172, otorgada en la ciudad de San Juan, Puerto Rico, el 29 de marzo de 2010, ante el Notario Jorge García Soto, sobre el bien inmueble que se describe a continuación. Dicha hipoteca consta debidamente inscrita sobre la finca objeto de ejecución en el Registro de la Propiedad, sección correspondiente.

> URBANA: Parcela de terreno identificada como solar número 7 de la Urbanización Terra Ciudad Jardín de Gurabo, radicada en el Barrio Hato Nuevo del municipio de Gurabo, Puerto Rico, con una cabida de 1093.5700 metros cuadrados. En lindes por el NORTE, en distancia de 6.312 metros y 5.951 metros, con la calle Sol de Amanecer (calle #1); por el SUR, en distancia de 4.924 metros, con el solar número 8 y en distancias de 26.508 metros y 7.979 metros y 3.257 metros, con la calle Sol de Lago (calle #2); por el ESTE, en distancia de 25.992 metros, con el solar 6 y en una distancia de 23.297 metros, con el solar número 2 y por el OESTE, en una distancia de 48.435 metros, con área de facilidades vecinales Ciudad Jardín Gurabo Resort and Country Club y área del Lago.

> Inscrita al folio ciento ochenta y cinco (185) del tomo cuatrocientos noventa y dos (492), finca número diecinueve mil ciento veintiséis (19126) de Gurabo, Registro de la Propiedad de Caguas, Sección II.

4. Según los términos del contrato de la hipoteca, la demandante-apelada, como tenedora de los créditos hipotecarios a que se refiere la demanda, podría declarar vencida la totalidad de la deuda si se dejaba de satisfacer los pagos dentro del término convenido.

5. El caso fue referido al Centro de Mediación de Conflictos, en cumplimiento con la Ley Núm. 184-2012, según enmendada, conocida como la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal", 32 LPRA secs. 2881 *et seq.*, en donde se determinó que la parte demandada-apelante reside en el estado de la Florida y el inmueble objeto de ejecución no constituye su residencia principal.

Ahora bien, y como parte del mismo ejercicio que estamos compelidos a efectuar, en cumplimiento con la Regla 36.4 de

Procedimiento Civil, *supra*, concluimos que existe controversia sobre los siguientes hechos medulares que impiden que se sostenga la *Sentencia Sumaria* apelada, a saber:

1.      Si mediaron maquinaciones insidiosas, engaño, conducta artificiosa o ilícita, o silencio por parte de Firstbank sobre elementos esenciales del contrato en controversia que tuvieron un efecto en las motivaciones principales que llevaron a la parte demandada-apelante a suscribir el pagaré y la escritura de hipoteca, los cuales, viciaron su consentimiento por dolo.

2.      La existencia real de una obligación de pago de la parte demandada-apelante, de mediar circunstancias dolosas en la ejecución del pagaré y la escritura de hipoteca.

3.      Si la deuda reclamada por Firstbank está vencida, es líquida y exigible, a base de los hechos anteriores, concomitantes y posteriores a que las partes suscribieran el pagaré y la escritura de hipoteca en controversia.

Nuestra conclusión sobre los hechos esenciales y pertinentes que entendemos están realmente controvertidos evitan que podamos sostener el dictamen apelado. Nótese que en el caso de autos está presente una controversia real sobre la existencia o no de dolo en la contratación que pudo haber viciado el consentimiento del matrimonio Díaz Font y que podría convertir tanto el pagaré como la escritura de hipoteca en nulos, por no existir uno de los elementos esenciales que debe mediar en todo tipo de contratación en nuestra jurisdicción. Recordemos que, en nuestra jurisdicción, los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, **siempre que en ellos concurran las condiciones esenciales para su validez**. El caso de autos, precisamente, presenta una controversia sobre una de dichas condiciones, a saber: la validez del consentimiento prestado por el matrimonio Díaz Font al suscribir el pagaré y la escritura de hipoteca en controversia.

Nótese que los Apelantes sostienen que Firstbank los indujo a otorgar ambos contratos mediante maquinaciones insidiosas, con el fin de

engañarlos y afectar la prestación voluntaria e informada de su consentimiento. Es decir, la naturaleza de las alegaciones esgrimidas por el matrimonio Díaz Font requieren que el TPI, como paso previo a la adjudicación de los méritos de la reclamación de cobro de dinero y ejecución de hipoteca, evalúe las implicaciones de la conducta imputada al Apelado y determine si las mismas fueron contrarias a la honestidad al principio de buena fe que rige en nuestro ordenamiento jurídico.

Así pues, corresponde que el foro primario adjudique, en una vista evidenciaria o en el juicio en su fondo, la procedencia de las alegaciones afirmativas y de la defensa de dolo esgrimidas por los Apelantes desde inicios del proceso legal de autos. Más aún cuando estamos ante un panorama fáctico y jurídico en el que existe una controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia que militan en contra de la disposición sumaria del pleito. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

Claro está, le corresponderá al matrimonio Díaz Font presentar la prueba que cumpla con el estándar de preponderancia de la evidencia y convencer al juzgador de los hechos sobre la existencia de dolo grave en la contratación. Por tanto, los Apelantes deberán presentar prueba alusiva a que el engaño recayó en los elementos esenciales de los contratos, que a su vez, tuvieron un efecto directo en las motivaciones principales que los llevaron a vincularse. *Véase*, Colón v. Promo Motors, Inc.*, supra*, pág. 669. **Esto es importante, pues la determinación de si el dolo es grave o incidental es una cuestión de hecho. Por lo tanto, está sujeta a la apreciación de las circunstancias concurrentes en cada caso**. Acosta & Rodas, Inc., v. PRAICO*, supra*, pág. 616.

Recalcamos, lo anterior es medular, pues está atado a la validez o no de los contratos cuyo cumplimiento solicita Firstbank que se determine y, en caso de ser así, la consecutiva orden de ejecución de hipoteca que conlleva el impago de las obligaciones descritas en el pagaré y en la escritura de hipoteca. Ahora bien, de conformidad con los hechos materiales en controversia contenidos en la presente *Sentencia*, esto es un

paso posterior a la determinación por parte del TPI sobre la existencia de dolo que presuntamente vició el consentimiento de los Apelantes que impide que a esta etapa de los procedimientos se pudiera disponer del caso sumariamente.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *revoca* la *Sentencia Sumaria* apelada y se devuelve el caso al TPI para la continuación de los procedimientos, de conformidad con lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones